USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOUIS GIRAU and ROSEMARY GIRAU,
        Plaintiffs,
  -against-

EUROPOWER, INC.,
        Defendant.
------------------------------------------------------------X

EUROPOWER, INC.,
        Second Third-Party Plaintiff,
  -against-

CRP INDUSTRIES, INC. and A&M INDUSTRIAL,
        Second Third-Party Defendants.
------------------------------------------------------------X

10-cv-4320 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge:

This action arises from an injury that Plaintiff Louis Girau ("Plaintiff"), an employee of Consolidated Edison Company of New York, Inc., sustained on the job while splicing cables. On December 18, 2008, the hose of the hydraulic cutter that Plaintiff was using burst, injecting hydraulic fluid and other materials from the hose into Plaintiff's right hand, allegedly causing him serious injury. Plaintiff asserts that Defendant and Second Third-Party Plaintiff Europower, Inc. ("Defendant" or "Europower") manufactured the hydraulic hose. By the time this action was commenced, Europower was purportedly no longer doing business and had no employees.

Currently before the Court are two sets of motions. First, Europower seeks to amend the Second Third-Party Complaint ("STPC"), which impleaded CRP Industries, Inc. ("CRP") and A&M Industrial ("A&M") (collectively, the "STPDs"). CRP and A&M individually oppose Europower's motion to amend and cross-move to dismiss the STPC. Second, Plaintiff seeks to preclude Defendant from asserting an affirmative defense, at some point in the future, that was

not previously raised in Defendant's Answer to the Second Amended Complaint – that Europower's non-party, foreign parent corporation, Europower Group Ltd. ("Group Ltd."), and not Defendant, actually manufactured the purportedly defective hydraulic hose that injured Plaintiff. Defendant has not yet asserted this defense in any fashion, nor specifically requested to amend its Answer.

For the following reasons, Europower's motion to amend the STPC is GRANTED. The STPDs' cross-motions to dismiss the STPC are DENIED as moot. Plaintiff's motion to preclude Europower from asserting an additional affirmative defense is DENIED.

## BACKGROUND

### 1. Europower's Motion to Amend the STPC

On October 17, 2013, Ronald Ciocca, a former employee of Europower, was deposed. Mr. Ciocca testified that CRP and A&M distributed Europower products, including hydraulic hose assemblies. In light of this testimony, on February 6, 2014, Europower filed and served its STPC to implead CRP and A&M, alleging six causes of action. Causes of action one through four assert allegations against CRP and A&M apparently on behalf of Plaintiff for negligence, breach of warranty, strict liability, and failure to warn. In essence, it appears that Europower simply restated the claims brought against it in Plaintiff's underlying complaint, but substituted CRP and A&M for itself. Causes of action five and six appear to request indemnification and contribution from CRP and A&M if a judgment or verdict is rendered against Europower.

Europower now moves to amend the STPC. The Proposed Amended Second-Third Party Complaint ("PASTPC") removes the first four causes of action, moving most of the allegations previously contained therein into a "Preliminary Statement," and now only alleges claims for indemnification and contribution. (*See* Decl. of John E. Horan in Supp. of Europower's Mot. to

Amend the STPC ("Horan Decl."), Ex. F.) Though the claims for indemnification and contribution are largely the same as previously alleged in the fifth and sixth causes of action in the STPC, the PASTPC contains two substantive changes. First, Europower now alleges that CRP and A&M placed the purportedly defective hose assembly into the stream of commerce and that "said defect was a substantial factor in causing Plaintiff's alleged injuries . . . ." (PASTPC ¶ 11.) Second, Plaintiff alleges in each of the claims that CRP and A&M "breached their duties in that they were negligent in the manufacture, assembly, sale and distribution of the hydraulic hose assembly, its individual parts and appurtenances, including the hydraulic hose." (*Id.* at ¶¶ 19, 22.)

CRP and A&M individually oppose Europower's motion to amend and cross-move to dismiss the STPC. The crux of both STPDs' oppositions to Europower's motion to amend is that the proposed amendments would be futile, are the result of undue delay, and would be prejudicial at this stage of the proceedings. The STPDs also suggest that Europower sought to implead them in bad faith as a last ditch effort to involve other purportedly deep-pocketed entities in an attempt to prolong the resolution of this matter.

### 2. Plaintiff's Motion to Preclude Europower from Asserting an Additional Affirmative Defense

Mr. Ciocca's deposition also revealed that the hydraulic hose in question was manufactured by "Europower England," formally known as Europower Group Ltd., the English parent-company of Defendant. Plaintiff asserts that this fact "came as a complete surprise" to him, and that his investigation had concluded that the hydraulic hose was designed, manufactured, and distributed by Defendant.

On March 10, 2014, Defendant responded to Plaintiff's Notice for Discovery and

3

Inspection, identifying Group Ltd. as the entity to which Mr. Ciocca referred. (Pl.'s Mot. to Preclude, at 6.) Plaintiff asserts that Group Ltd. filed for bankruptcy in 2007 and ceased to exist in or about 2011. (*Id.*)

Although Plaintiff has not sought leave to amend its Answer, Defendant, "anticipating that . . . Europower[] would wait until the eleventh hour to assert the affirmative defense that its parent corporation, Europower Group Ltd. . . . was the manufacturer of the hydraulic hose," now moves to preclude Defendant from asserting this affirmative defense "on the ground that . . . failure to do so in a responsive pleading operates as a waiver of the defense as a matter of law pursuant to Rule 8(c)" of the Federal Rules of Civil Procedure. (Pl.'s Mot. to Preclude, at 7.)

## STANDARD ON A MOTION TO AMEND A PLEADING

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court. Fed. R. Civ. P. 15(a)(1)-(2). When a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court may deny leave to amend for "[r]easons [of] . . . undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'")).

1. **Futility**

Leave to amend may be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001)); *accord Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182). A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted). Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (denying motion to add claims as futile)).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997). The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotation marks omitted).

2. **Undue Delay and Prejudice**

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy*, 626 F.3d at 725 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "Mere delay, . . . absent a

5

showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo*, 514 F.3d at 191 (quoting *State Teachers Ret. Bd.*, 654 F.2d at 856); *accord Block*, 988 F.2d at 350. Thus, if the underlying facts and circumstances upon which the moving party relies support the additional claim or defense, the party "ought to be afforded an opportunity to test [its] claim [or defense] on the merits." *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman*, 371 U.S. at 182); *accord EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007).

A district court may, however, "deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). In determining whether the opposing party would be prejudiced, courts within the Second Circuit generally consider "whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block*, 988 F.2d at 350). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block*, 988 F.2d at 350 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

## DISCUSSION

### 1. Europower's Motion to Amend the STPC

Europower's PASTPC asserts claims for indemnification and contribution. In support of these claims, Europower sets forth a number of allegations in its Preliminary Statement,

6

including that: (1) CRP and A&M "designed, manufactured and assembled" the hydraulic hose and its parts that allegedly injured Plaintiff, placed the defective product into the stream of commerce, and that the "defect was a substantial factor in causing Plaintiff's alleged injuries . . ." (PASTPC ¶ 11); and (2) CRP and A&M "sold, distributed, or otherwise conveyed title of the cable cutter, its parts and appurtenances, including a hydraulic hose and plastic sleeve to the [P]laintiff's employer . . . ." (*Id.* ¶ 13.) Europower further alleges that the STPDs "were negligent in the manufacture, assembly, sale and distribution of the hydraulic hose assembly," and that if Plaintiff sustained the injuries and damages of which he complains, the STPDs caused said injuries and damages as a result of their negligence or recklessness "without any wrongdoing on the part of [Europower] contributing thereto." (*Id.* ¶¶ 19, 22.) Thus, Europower concludes that if any judgment or verdict is rendered against it, it is entitled to judgment against the STPDs for: (1) "the entire amount of any such verdict or judgment not attributed to the negligence of" Europower, (*Id.* ¶ 20); (2) "contribution . . . for the entire amount of any such verdict or judgement which is not attributed to the sole and exclusive negligence of" Europower, (*Id.* ¶ 23); and (3) "contribution . . . equal to the proportionate share of responsibility as is adjudged between and amongst all of the defendants . . . ." (*Id.* ¶ 24.) Although Europower does not specifically identify its first claim in the PASTPC as one for indemnification, the Court construes it as such.

### A. Indemnification

Indemnification "arises out of an express or implied contract" by which "the party held legally liable shifts the entire loss to another to prevent a result which is regarded as unjust or unsatisfactory." *Matter of Poling Transp. Corp.*, 784 F. Supp. 1045, 1047-48 (S.D.N.Y. 1992), *as amended* (Mar. 11, 1992) (citing *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 689-90 (1990))

(internal quotation marks and additional citations omitted). "A right to 'implied indemnification' can exist even absent an *express* agreement creating a right to indemnification." *Id.* at 1048 (citing *Bellevue South Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 296 (1991); *Mas*, 75 N.Y.2d at 690; *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986)) (emphasis in original). Europower has not alleged a right to express contractual indemnification from the STPDs. Accordingly, the Court analyzes its claim under a theory of implied indemnification.

Indemnification may be implied when "[a] person [ ], in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other . . . ." *McDermott v. City of New York*, 50 N.Y.2d 211, 217 (1980) (quoting Restatement (First) of Restitution § 76). Thus, "[i]mplied indemnity is frequently employed in favor of one who is vicariously liable for the tort of another . . . ." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24 (1985) (internal citation omitted). "While vicarious liability is a common example of a situation that calls for implied indemnification, indemnity is also available in cases where liability is based on strict product liability and breach of warranty. . . . In general terms, indemnity allows a defendant to recover for a loss occasioned solely 'by imputation of law,' that it would otherwise be forced to bear on its own." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 325 (S.D.N.Y. 2010) (internal citations omitted). Ultimately, "to obtain indemnity, the conduct of the proposed indemnitor must have *caused* the loss for which the proposed indemnitee has been found liable." *Id.* at 326 (citing *George v. Marshalls of MA, Inc.*, 61 A.D.3d 925, 930 (2d Dep't 2009) (to obtain indemnity, defendant was required to show that plaintiff's injuries were "attributable" to the third-party defendant)) (emphasis in original).

8

First, Europower alleges that the defect in the hydraulic hoses designed, manufactured, and assembled by CRP and A&M "was a substantial factor in *causing* Plaintiff's alleged injuries . . . ." (PASTPC ¶ 11) (emphasis added). This allegation, which appears to be asserted for the first time in the PASTPC, is sufficient to satisfy the causation requirements for indemnification under New York law at the motion to dismiss stage. *See Blank Rome, LLP v. Parrish*, 92 A.D.3d 444, 445 (1st Dep't 2012) ("In order to recover on a claim for common law indemnification, 'the one seeking indemnity must prove . . . that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident for which the indemnitee was held liable to the injured party by virtue of some obligation imposed by law.'" (quoting *Correia v. Prof'l Data Mgmt., Inc.*, 259 A.D.2d 60, 65 (1st Dep't 1999))).

Next, although the STPDs correctly note that Europower has not alleged any vicarious relationship with them, and CRP appears to argue that Europower has not alleged how it could be "liable in any other way imputed by law," (*see* CRP's Mot. in Opp. at 7), "indemnity is also available in cases where liability is based on strict product liability and breach of warranty." *Stern*, 693 F. Supp. 2d at 325. Europower alleges the existence of certain express or implied warranties concerning the hydraulic hose assembly, which would create liability imputed by law. (*See* PASTPC ¶ 15); *see also McDermott v. City of New York*, 50 N.Y.2d 211, 220 n.5 (1980). In *McDermott*, the plaintiff, a sanitation worker for the City of New York, sued the City after his arm was severed by a hopper mechanism attached to the City's sanitation trucks. The City then brought a third-party action for indemnification against the manufacturer of the hopper based on, among other theories, breach of warranty. The New York Court of Appeals explained that "[s]ince the focus of the indemnity claim is on whether the [C]ity has discharged a duty which should have been borne by [the manufacturer], the products liability assertion is relevant only to

9

determine whether [the manufacturer] breached a duty owed to the injured sanitation worker. In short, the [C]ity does not seek to recover in its own right for products liability; rather, it asserts that [the manufacturer] breached a duty to the injured sanitation worker and is therefore responsible for damages the [C]ity had to pay on account of the breach of duty." *Id.* Here, like the City in *McDermott*, Europower does not seek to recover damages in its own right for the failure of the hydraulic hose, but instead asserts that the STPDs, as the designers, manufacturers, and assemblers[1] of the hoses, breached their warranties to Plaintiff and are therefore responsible for any damages Europower may be required to pay on account of that breach.

Finally, although CRP correctly notes that indemnification is not available in New York "where the party seeking indemnification was 'partially at fault' or 'responsible in any degree' in situations where the parties violated the same duty to the plaintiff[,]" *Stern*, 693 F. Supp. 2d at 326 (citing *Monaghan v. SZS 33 Assoc., L.P.*, 73 F.3d 1276, 1284-85 (2d Cir. 1996)), Europower has sufficiently alleged how it "could be found free from fault and at the same time liable for damages" to Plaintiff because of the STPDs – by breach of the express and/or implied warranties made by the STPDs to induce Plaintiff's employer to purchase the hydraulic cutter. (*See* PASTPC ¶ 15); *see also McDermott*, 50 N.Y.2d at 220 n.5. To the extent that Europower is found to be partially at fault, and such fault may not be imputed by law to the STPDs, indemnification will not be available. But such a determination is not appropriate, or possible, at the motion to dismiss stage of the proceedings.

---

[1] A&M also argues that Europower is not entitled to indemnification because Europower "is higher in the chain of distribution" for the hose assembly. (*See* A&M Mot. in Opp. at 8.) Although this rule may apply to distributors of products, *see, e.g., Lowe v. Dollar Tree Stores, Inc.*, 40 A.D.3d 264 (1st Dep't 2007), Europower alleges that the STPDs "designed, manufactured and assembled the hydraulic hose assembly . . . ." (PASTPC ¶ 11.) Treating Europower's allegations as true for purposes of this motion, the STPDs are not solely distributors, and this rule is therefore inapplicable at this stage of the matter.

10

Accordingly, Europower's claim for indemnification is not futile, as it states a plausible claim for relief.

### B. Contribution

"[W]here . . . two or more tortfeasors share in responsibility for the same injury . . . apportionment through contribution, rather than a shifting of the entire loss through implied indemnification, is generally the appropriate remedy." *Johnson City Cent. Sch. Dist. v. Fid. & Deposit Co. of Maryland*, 272 A.D.2d 818, 822 (3d Dep't 2000) (citing *Guzman v. Haven Plaza Hous. Dev. Fund Co.*, 69 N.Y.2d 559, 568 (1987)). "The crucial element in allowing a claim for contribution to proceed is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Stern*, 693 F. Supp. 2d at 324 (S.D.N.Y. 2010) (citing *Raquet v. Braun,* 90 N.Y.2d 177, 183 (1997)) (internal quotation marks and other citations omitted). "Thus, contribution is available whether or not the culpable parties are allegedly liable for the injury under the same or different theories, and the remedy may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors." *Raquet*, 90 N.Y.2d at 183.

The PASTPC asserts a plausible claim for contribution. As described above, Europower alleges that the defective hydraulic hose assembly "designed, manufactured and assembled" by the STPDs "was a substantial factor in *causing* Plaintiff's alleged injuries . . . ." (PASTPC ¶ 11) (emphasis added). Because Europower alleges how the purported defect contributed to Plaintiff's alleged injuries, Europower's claim for contribution is not futile. *Stern*, 693 F. Supp. 2d at 324 (dismissing a claim for contribution where the third-party complaint failed to explain how the third-party defendant's misrepresentation contributed to any injury to the plaintiff).

### C. Undue Delay and Prejudice

11

Although Europower's claims for indemnification and contribution are not futile, the Court may still deny leave to amend if "the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell*, 922 F.2d at 72.

CRP and A&M both argue that Europower's motion clearly follows an inordinate delay, as the underlying action has been pending since 2010 and discovery has already closed. A&M also asserts that Europower was in receipt of some A&M discovery as early as May 2013 and presumably should have brought this third-party action earlier. Nevertheless, Europower filed the STPC on February 6, 2014, (Docket No. 79), sought leave to amend the STPC by pre-motion letter on April 24, 2014, and served the instant motion on the STPDs on July 15, 2014 in accordance with the Court's briefing schedule. (*See* Horan Decl., Ex. G.) Europower's motion to amend the STPC was filed approximately five months after the initiation of the second third-party action, and Europower's initial notice to the STPDs stating its intention to amend occurred less than three months after initiating this action. The mere fact that Europower waited to file the STPC until after the completion of its witness' deposition in October 2013, despite being in receipt of some discovery in May 2013, is of no consequence, particularly in light of the fact that the purported delay relates to the initial filing of the STPC, not the motion to amend. *See, e.g., A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 316 (S.D.N.Y. 2014) (finding it reasonable to wait for completion of depositions to develop discovery before filing a motion to amend despite the moving party having knowledge of the underlying facts four months earlier, as well as citing other cases permitting such temporal gaps in this District). Therefore, the Court finds that amendment of the STPC within only a few months of filing does not constitute undue delay.

Nor does the Court find any prejudice to the STPDs by permitting amendment of the STPC. The STPDs purported need to conduct discovery, and even abundant discovery as A&M contends, (*see* A&M Mot. in Opp. at 10), is insufficient to show undue prejudice. "[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (citing *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 43 (2d Cir. 1979)). "Allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (citing Block, 988 F.2d at 351).

### D. Second Third-Party Defendants' Cross-Motions to Dismiss

CRP's and A&M's cross-motions to dismiss the STPC are now moot in light of the Court permitting Europower to amend the STPC. The Court therefore declines to review them. *See, e.g., Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 85 (E.D.N.Y. 2011); *Kriwox v. EBS-RMSCO, Inc.*, No. 10 Cv. 1070, 2011 WL 2133624, at *3 (N.D.N.Y. May 26, 2011).

### 2. Plaintiff's Motion to Preclude Europower from Asserting an Additional Affirmative Defense

As discussed above, leave to amend should be freely given, except in instances of "undue delay, bad faith, futility of amendment, and . . . prejudice to the opposing party." *State Teachers Ret. Bd.*, 654 F.2d at 856 (citing *Foman*, 371 U.S. at 182). Although Plaintiff appears to argue that Europower's failure to plead an affirmative defense in its Answer operates as a blanket waiver of the defense, no such rule exists in this District. Instead, courts in this District and Circuit have held that "a defendant's failure to raise all affirmative defenses in its initial answer

13

does not inevitably result in a waiver. 'As long as amendment of the pleadings does not prejudice plaintiffs, defendants will not be precluded from adding additional defenses . . . .'" *Lamont v. Frank Soup Bowl*, No. 99 Cv. 12482 (JSM) (HBP), 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (quoting *Ragin v. Harry Macklowe Real Estate Co.*, 126 F.R.D. 475, 478 (S.D.N.Y. 1989) (defendants permitted to amend answer and raise numerous affirmative defenses); *accord Gutman v. Equidyne Extractive Indus. 1980 Petro/Coal Program I*, 769 F.Supp. 121 (S.D.N.Y. 1991); *Fiske v. Church of St. Mary of the Angels,* 802 F.Supp. 872 (W.D.N.Y.1992)). Thus, as an initial matter, Europower is not categorically precluded from amending its Answer to assert the affirmative defense that its parent, Group Ltd., manufactured the hydraulic hose.

Nevertheless, Plaintiff alleges a litany of prejudicial effects from Europower's failure to assert this affirmative defense, including depriving Plaintiff of the opportunity to name Group Ltd. as a direct defendant. Plaintiff contends that at this point in the litigation, three years after Group Ltd. ceased to exist as a corporate entity, it will be difficult, if not impossible, to locate and contact its representatives. More importantly, the applicable statute of limitations has purportedly expired on claims against Group Ltd.

Despite these purported prejudicial effects, which may or may not be sufficient to deny Europower leave to amend its Answer, the fact remains that Europower has not yet asserted this defense in any fashion, nor specifically requested to amend its pleadings. Without knowing whether the prejudicial effects that Plaintiff currently asserts would continue to exist at an unspecified point in time in the future, when Europower could potentially seek to amend its Answer or otherwise assert this defense, it is impossible for the Court to assess the resulting prejudice. In short, this issue is not yet ripe for resolution, and the Court therefore denies

Plaintiff's motion to preclude without prejudice to renewing it at the appropriate time.

## CONCLUSION

For the foregoing reasons, Europower's motion to amend is GRANTED, and CRP's and A&M's cross-motions to dismiss are DENIED as moot. Plaintiff's motion to preclude Europower from asserting an additional affirmative defense is DENIED. Europower shall have until 30 days from the date of this Order to amend the Second Third-Party Complaint. The Second Third-Party Defendants shall have until 60 days from the date of this Order to file responsive pleadings. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 110, 111, and 118.

Dated: July 24th, 2015
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge