UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS GIRAU and ROSEMARY GIRAU,

                       Plaintiffs,

   -against-

EUROPOWER, INC.,

                       Defendant.

EUROPOWER, INC.,

         Second Third-Party Plaintiff,

   -against-

CRP INDUSTRIES, INC. and A&M INDUSTRIAL,

        Second Third-Party Defendants.

No. 10 Civ. 4320 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      The allegations in this action stem from an accident occurring on December 18, 2008, where Plaintiff Louis Girau ("Plaintiff") sustained an on-the-job injury. Plaintiff, an employee of Consolidated Edison Company of New York, Inc. ("ConEd"), was splicing cables when the hose of the hydraulic cutter that he was using burst, injecting hydraulic fluid, under immense pressure, and other materials from the hose into Plaintiff's right hand, causing him serious injury. Since the filing of their first complaint, Plaintiff and his wife ("Plaintiffs") have named numerous entities, including Defendant and Second Third-Party Plaintiff Europower, Inc. ("Europower"), as responsible for manufacturing the allegedly defective hydraulic hose that led

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/2016

to the injury.  But, by the time this action was commenced, Europower was purportedly no longer in business and had no employees.  Instead, a new entity, EP Cleveland, Inc. ("EP Cleveland"), had purchased the business and operated as a successor to Europower.

CRP Industries, Inc. ("CRP") and A&M Industrial ("A&M") (collectively, the "Supply Chain Defendants") were brought into the action on February 6, 2014, by Europower's Amended Third-Party Complaint (ECF No. 79), which impleaded them as Second Third-Party Defendants on claims of indemnification and contribution for any potential negligent modification or distribution of the allegedly defective hose.

Plaintiffs now seek to leave to amend the complaint in the direct action to add the Supply Chain Defendants as potentially liable for Plaintiffs' personal injury and product liability claims. (ECF No. 158.)  Because the statute of limitations ran on Plaintiffs' claims on December 18, 2011, leave to amend can only be granted if the proposed amendment—the addition of the Supply Chain Defendants—meets the relation back requirements.  For the following reasons, those requirements are not met, and Plaintiffs' motion to amend is DENIED.

## BACKGROUND

**I.      The Accident and Subsequent Investigation**

Shortly after the accident discussed above, Plaintiff's employer, ConEd, assigned another employee to investigate the cause of the equipment malfunction.  (Decl. of Steve Anduze, Esq., Supp. Pls. Mot. Am. Compl. ("Anduze Decl."), ECF Nos. 158 & 159, Ex. 9 (Dep. of Non-Party Kyle Lee, Sept. 29, 2015 ("Lee Tr.")), at 22:16-23:13.)  That employee, whose name was unknown to Plaintiffs until years later, inspected the hose and reviewed ConEd's purchase and stock records, quickly determining that Europower, CRP, and/or A&M were potentially involved in the production, distribution, or sale of the hose in question, (Lee Tr. at 23:19-24:1, 25:7-27:9),

and contacted Europower to discuss the rupture and seek additional information regarding the hose assembly.  (Anduze Decl., Ex. 8.)  Though the exact parties involved in creating the hose assembly would not be clear to Plaintiffs for many years, it consisted of at least three component parts that were combined, per a ConEd specification, by Europower, CRP, and/or A&M prior to being sold to ConEd.  (Lee Tr. at 44:2-18, 47:24-48:6, 60:16-20; Anduze Decl., Ex. 7 (Dep. of EP Cleveland employee Ron Ciocca, Jr., Oct. 17, 2013 ("Ciocca Tr."), at 23, 28) & Ex. 10.)[1]

Approximately a month after the accident, in January 2009, the ConEd investigator invited A&M to the Astoria facility where the equipment was being stored to inspect the hose. (Lee Tr. at 32:3-33:6.)  A representative of CRP, uninvited and unknown to the investigator, also attended the meeting.  (Lee Tr. at 71:13-22; Decl. of Steve Anduze, Esq., Supp. Pls. Reply, ECF No. 162, Ex. 14 (Dep. of Non-Party Kyle Lee, Jan. 12, 2016 ("Lee 2d Tr.")), at 173:6-176:10.)

Plaintiffs were not aware of this information when they filed their action, or their amended complaints.[2]

## II.    Procedural History and Factual Development

On April 19, 2010, Plaintiffs commenced this personal injury action in state court against a number of defendants that are no longer parties to this lawsuit—The SPX Corporation ("SPX"),[3] The Eaton Corporation ("Eaton"),[4] The CT Corporation ("CT Corp."),[5] and The

---

[1] A representative for Europower would eventually explain that CRP bought hose in bulk from Europower to modify and then distribute, potentially to ConEd, and that A&M had purchased hose assemblies based on a ConEd specification directly from Europower only once.  (Ciocca Tr. at 29, 33, 50-51.)

[2] Plaintiffs were aware by late 2013 that CRP or A&M might be involved due to Europower's discovery efforts, namely subpoenaing the Supply Chain Defendants for information.  They were fully apprised of the Supply Chain Defendants' potential involvement in January 2016, when the investigator for ConEd produced the business cards of the representatives for CRP and A&M present at the January 2009 meeting.  (Lee 2d Tr. at 175:3-16; Letter from Plaintiffs' Counsel to Court dated Apr. 15, 2016.)

[3] On August 27, 2010, SPX was dismissed without prejudice from the lawsuit.  (ECF No. 12.)

[4] Eaton was dismissed from the case on September 29, 2010.  (ECF Nos. 14 & 20.)

[5] CT Corp. had been joined to the action in error.  (Notice of Removal ¶¶ 9-13; *see also* ECF No. 21.)

Baldwin Supply Corp. ("Baldwin")—alleging each of those defendants were involved in the manufacturing and/or distribution of the hose that burst. (Notice of Removal, Ex. A ¶¶ 13-17, 20-24, ECF No. 1.) The matter was removed from state court to this Court on the basis of diversity.[6] In August 2010, "[a]n expert accompanying counsel for [SPX]" to "a physical inspection of the equipment" concluded, and informed Plaintiffs, that the hose was a Europower hose. (Pls. Reply Mem. Supp. Mot. Amd. Compl. ("Pls. Reply") at 4.[7]) The majority of these defendants were then dismissed from the action, and Plaintiffs amended their complaint on June 30, 2011 (ECF No. 22.),[8] to add Europower, Parker Hannifin Corporation ("Parker Corp."), and Parker Hose Division, Inc. ("Parker Hose"), though the latter two would subsequently be dismissed from the suit. On September 15, 2011, EP Cleveland was added in anticipation of Plaintiffs' Second Amended Complaint, filed on October 14, 2011. (ECF Nos. 29-30.)[9]

At this point, Plaintiffs had identified and added the manufacturer of the bulk lengths of hose and its successor corporation—Europower and EP Cleveland, respectively—but had not yet correctly identified the remaining entities in the supply chain. Nevertheless, on December 18, 2011, the statute of limitations ran on Plaintiffs' personal injury and product liability claims.

On February 6, 2012, a Rule 16 scheduling order was entered, setting discovery deadlines and providing for further amended pleadings "within 45 days of all depositions," with "non-party

---

[6] While CT Corp. shared the same citizenship as Plaintiffs (New York), removal was proper given Plaintiffs' concession that CT Corp. had been joined in error. (Notice of Removal ¶¶ 9-13.)

[7] The Court references the ECF-stamped page numbers for Plaintiffs' memoranda.

[8] The case was inadvertently closed, apparently due to confusion over a "Stipulation and Order of Dismissal" that was actually a partial order of dismissal only applicable to claims against Eaton. (*See* ECF No. 14.) It was then twice transferred to different District Judges before the case continued against the remaining defendant, Baldwin. (*See* ECF Nos. 15, 18.)

[9] On February 7, 2012, Baldwin, Parker Hose, and EP Cleveland were dismissed. (ECF No. 61.)

depositions [] follow[ing] party depositions." (ECF No. 60.)[10] By this time, only Europower and Parker Corp. remained as defendants.[11] On June 25, 2012, Europower filed a third-party complaint against ConEd, instituting its own action for indemnification and contribution in the event of an adverse judgment (ECF No. 63.); however, ConEd was also eventually dismissed.[12] Discovery proceeded in the matter until it was reassigned to this Court on July 12, 2013—the undersigned being the fifth District Judge to preside over the case.[13]

The Supply Chain Defendants indicate that they responded to Europower's discovery subpoenas between August and October 2013, providing documentation such as invoices between CRP and A&M. (Decl. Cathleen A. Giannetta in Opp'n to Pls. Mot. Am. Compl. ("Giannetta Decl."), Ex. E (Aff. of Kevin Rosenthal ("Rosenthal Aff.") at ¶ 6); Decl. Robert J. McGuirl in Opp'n to Pls. Mot. Am. Compl. ("McGuirl Decl."), Ex.7 (Aff. of Sabine Gilson ("Gilson Aff.") at ¶ 3).) Plaintiffs indicate that it was in or around October 2013 that Europower provided them with the documentation showing CRP and A&M were distributors of the hose in question. (*See* Letter from Plaintiffs' Counsel to Court, ECF No. 144; Pls. Mem. in Supp. of Mot. Amd. Compl. ("Pls. Supp.") at 2, 5-6, ECF No. 161; *see also* Gianetta Decl., Ex. F.)

---

[10] The scheduling order was amended multiple times, extending the discovery cut-off date, but leaving the timeframe for amending pleadings intact. (*See, e.g.*, ECF Nos. 71 (Oct. 10, 2012 Amd. Order extending discovery until Apr. 8, 2013); Minute Entry from Apr. 9, 2013 extending discovery until Aug. 9, 2013; 74 (Aug. 14, 2013 Stip. Order extending various deadlines without specifically mentioning the discovery cut-off date); 75 (Oct. 2, 2013 letter from counsel requesting extension to depose Ron Ciocca; request granted and discovery extended until Oct. 24, 2013); 76 (Oct. 29, 2013 letter from counsel requesting extension to conduct non-party discovery regarding CRP and A&M; request granted and discovery extended until Jan. 27, 2014)).

[11] On June 27, 2012, Parker Corp. was dismissed from the direct action. (ECF No. 64.)

[12] On August 20, 2014, ConEd was dismissed from the suit after its motion for summary judgment was granted on the grounds that Plaintiff's injury was not a "total loss of use" as required to fall within the limited statutory allowance for maintaining a third-party suit under New York's Workers' Compensation law. (Mem. Op. & Order at 2, ECF No. 106.)

[13] This Court held a status conference on August 9, 2013, and extended various discovery deadlines. (*See* Minute Entry for Status Conference; *see also* ECF No. 74.)

On October 3, 2013, based on Europower's representation that it had only just been able to gain access to one of its former employees, discovery was again extended to October 24, 2013, to allow for the deposition of the sales manager at the time of the accident: Ron Ciocca. (ECF No. 75.)  During his October 17, 2013 deposition, Mr. Ciocca discussed the potential involvement of CRP and A&M in the hose supply chain.  (Ciocca Tr. at 14-17, 23, 29-31.)

Afterwards, Europower again requested an extension of the discovery cut-off to conduct non-party discovery, including potential depositions, of CRP and A&M—the parties Plaintiffs now seek to add to the direct action.  This Court granted an additional extension until January 27, 2014, though the record does not indicate that any discovery against the Supply Chain Defendants was conducted by either Europower or Plaintiffs during that time.  (CRP Mem. in Opp'n to Pls. Mot. Am. Compl. ("CRP Opp'n") at 4, 14; *see* A&M Mem. in Opp'n to Pls. Mot. Am. Compl. ("A&M Opp'n") at 13.)  On February 6, 2014, Europower amended its third-party complaint to implead CRP and A&M on claims of indemnification and contribution for any potential negligent modification or distribution of the allegedly defective hose.  (ECF No. 79.)[14]

### III.  Plaintiffs' Motion to Amend Their Complaint in Order to Name the Supply Chain Defendants as Defendants in the Original Action

On August 31, 2015, Plaintiffs indicated their intention to file the motion now pending before the Court to amend their complaint to bring personal injury and product liability claims against CRP and A&M (the Supply Chain Defendants) directly.  (ECF Nos. 144 & 158.)  At this point, Plaintiffs' direct action was—as it had been since June 27, 2012, more than three years prior—only against Europower.  Discovery continued while the motion was briefed, and on September 29, 2015, ConEd, now a non-party, produced for testimony the employee assigned to

---

[14] Both CRP and A&M sought to dismiss the third-party claims.  On July 24, 2015, this Court denied CRP and A&M's respective motions to dismiss as moot, instead providing Europower with an opportunity to amend its third-party complaint, which Europower did on August 20, 2015.  (Op. & Order, ECF No. 141; ECF No. 143.)

investigate the accident: Kyle Lee.  (Lee Tr. at 22:16-23:13.)  Mr. Lee testified during his

deposition that representatives from CRP and A&M were present at a meeting held shortly after

the accident at a ConEd facility in <u>January 2009</u>, where Mr. Lee and the representatives

discussed the condition of the hose.  (Lee Tr. at 26:18-24, 32:3-34:5.)  The deposition continued

on January 12, 2016 to allow CRP to take part in questioning Mr. Lee, who subsequently

provided Plaintiffs with the business cards for the representatives from both CRP and A&M that

were at the January meeting.  (Pls. Reply at 8 n.7; Letter from Plaintiffs' Counsel to Court dated

Apr. 15, 2016.)  The motion to amend was submitted as of February 23, 2016.

<strong>LEGAL STANDARD ON A MOTION TO AMEND THE PLEADINGS</strong>

Federal Rule of Civil Procedure 15 governs amendments to pleadings, providing for one

amendment as a matter of course but requiring further amendments be conditioned on either "the

opposing party's written consent or the court's leave"—the latter of which should be "freely

give[n] . . .when justice so requires."  Fed. R. Civ. P. 15(a)(2).  If during the proceedings the

Court enters a Rule 16 scheduling order that further restricts amendments, then "the lenient

standard under Rule 15(a) . . . must be balanced against the [stricter] requirement under Rule

16(b)[.]"  *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (internal citations omitted).

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the

judge's consent," where "'good cause' depends on the diligence of the moving party."  Fed. R.

Civ. P. 16(b)(4); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Whether leave to amend is given freely or for good cause, if the statute of limitations has

run on the claims asserted in the pleading, then an amendment that "changes the party or the

naming of the party against whom a claim is asserted" must be found to "relate[] back to the date

of the original pleading" in order to be timely.  Fed. R. Civ. P. 15(c); *Krupski v. Costa Crociere*

7

*S. p. A.*, 560 U.S. 538, 550 (2010) ("relation back . . . balance[s] the interests of the defendant

protected by the statute of limitations with the preference . . . for resolving disputes on their

merits").  Relation-back in this context can occur in two ways.  Under the federal rule, the new

party can be added, changed, or substituted by satisfying the conditions of Rule 15(c)(1)(C):

> (1) the claim must have arisen out of conduct set out in the original
> pleading; (2) the party to be brought in must have received such
> notice that it will not be prejudiced in maintaining its defense;
> (3) that party should have known that, but for a mistake of identity,
> the original action would have been brought against it; and (4) the
> second and third criteria are fulfilled within 120 days[15] of the filing
> of the [timely] original complaint[.]

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (modifications in original omitted) (quoting

*Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468-69 (2d Cir. 1995)).  When relation back

cannot be found under Rule 15(c)(1)(C), the state law "that provides the applicable statute of

limitations" can be considered if it provides a more lenient rule.  *See* Fed. R. Civ. P. 15(c)(1)(A);

*Coons v. Industrial Knife Co., Inc.*, 620 F.3d 38, 42 (1st Cir. 2010) ("the choice between these

two provisions [is] 'a one-way ratchet,' meaning that a party is entitled to invoke the more

permissive relation back rule"); *Hogan*, 738 F.3d at 517-20 (applying New York relation back

principles where the federal standard was less permissive).

## DISCUSSION

Plaintiffs' personal injury and products liability claims are governed by New York law,

which provides a three year statute of limitations.  N.Y. C.P.L.R. §§ 214(4) & (5); *SOCAR*

---

[15] This matter was filed in 2010, long before the recent amendment to Federal Rule of Civil Procedure 4(m) reducing the time period from 120 days to 90 days. Fed. R. Civ. P. 4(m) Advisory Comm. Notes (2015 Amendment) (designed to "reduce delay at the beginning of litigation."). Plaintiffs' expressed desire to amend the complaint in August 2015, and the amendment became effective on December 1, 2015. Here, the most just and practicable course of action, avoiding any surprise to the parties, is to use the prior time period in deciding the instant motion. *See, e.g.*, *Carlos v. York County*, No. 15 Civ. 1994 (JFS), 2016 WL 1706163, at *4 n.5 (M.D. Pa. Apr. 27, 2016) ("the pre-amendment version of Rule 4(m), providing a 120-day time period, shall govern proceedings in this case"). Notably, providing the additional 30-day window has no impact on the analysis herein.

(*Societe Cameroonaise d'Assurance et de Reassurance*) *v. Boeing Co.*, 144 F. Supp. 3d 391, 396 (E.D.N.Y. 2015).  The statute of limitations on Plaintiffs' claims ran on December 18, 2011, three-years after the hose ruptured and caused Plaintiff's serious injury.  Plaintiffs' Second Amended Complaint ("SAC") was timely filed on October 14, 2011 (ECF No. 30), prior to the running of the statute of limitations, and is the operative complaint for amendment purposes.

This Court must now determine whether Plaintiffs can amend that complaint to add CRP and A&M as direct defendants where Plaintiffs first raised such a possibility *more than three years after* the limitations period elapsed—in essence, providing Plaintiffs with double the statute of limitations period.  The theme of Plaintiffs' argument in support of amending their complaint is that (1) a "conspiracy of silence" stymied their attempts to investigate the proper parties to name in this action; (2) those parties were aware of the accident and in fact investigated the hose shortly afterwards; and, (3) the balance of equities favors amendment.  (Pls. Reply at 3, 11.)[16]  CRP counters, and A&M similarly argues, that the failure to name the Supply Chain Defendants in the direct action was "intentional, due to a lack of knowledge, born[e] of a lack of diligence," which, when coupled with CRP and A&M's obliviousness to the pending litigation, requires that leave to amend be denied.  (CRP Opp'n at 9-10; A&M Opp'n at 8, 12-13, 20.)  In support of that assertion, the Supply Chain Defendants point to Plaintiffs' delay in bringing the present motion to amend and failure to pursue discovery in a timely manner, instead relying on Europower to uncover the proper parties to the action.

As the statute of limitations has already run, Plaintiffs' attempt to add the Supply Chain Defendants must meet the relation back requirements before leave can be granted.

---

[16] During a status conference held on January 25, 2012, after that statute of limitations had run, Plaintiffs did inform the court (Ramos, J.) that ConEd was not providing any information in response to Plaintiffs' requests.

I.      **Relation Back of the Supply Chain Defendants: Application of Rule 15(c)**

The Court will consider which, if either, framework—federal or state—provides the more lenient approach for amendment in this case, starting with the federal rule.  If federal relation back principles do not allow Plaintiffs' proposed amendment to relate back and be deemed timely, then the Court will consider the strictures of New York's relation-back doctrine.  *See, e.g.*, *Hogan*, 738 F.3d at 517-20 (considering the federal rule prior to analyzing New York law).

a.   **Rule 15(c)(1)(C): Whether the Supply Chain Defendants Knew They Were Previously Left Out of the Action Due to Plaintiffs' Mistake**

Rule 15(c)(1)(C) is applicable in situations where the proposed new party was originally omitted from the suit on the basis of a "mistake concerning the proper party's identity." Notwithstanding the assertion of such a mistake, and assuming the claims sought to be brought against the new party arise out of the same conduct alleged in the previously initiated suit, the key inquiry is whether the party sought to be added received appropriate notice of the action. *See In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1024 (2d Cir. 1989) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986), *superseded by statute*, *see* Fed. R. Civ. P. 15(c) Advisory Comm. Notes (1991 Amendment)) ("The linchpin [of relation back] is notice, and notice within the [prescribed] period.")  Therefore, the test for relation back under Rule 15(c)(1)(C) has three parts: (1) the claims must arise out of "the conduct, transaction, or occurrence set out" in the timely complaint; (2) the proposed party must have "received such notice of the action" within the Rule 4(m) period after the filing of the timely complaint that "it will not be prejudiced in defending on the merits"; and (3) within that same period of time, the party must have known "or should have known that the action would have been brought against it" absent the mistake.

The first part of the test is unequivocally met in this case.  The claims sought to be alleged against CRP and A&M arise out of the same conduct previously alleged in the SAC: the manufacture and distribution of the hose which burst and caused Plaintiff's injuries.  Plaintiffs have not indicated a desire to change any of the specific claims asserted.  Rather, this is yet another attempt to name the correct entities in the supply chain.  As the extensive procedural history demonstrates, Plaintiffs have found this task challenging.  But for the Supply Chain Defendants to be added into the action now, the relevant question is what they knew or should have known on or before February 13, 2012—or 120 days after Plaintiffs filed the SAC.[17] *Hogan*, 738 F.3d at 517 ("within 120 days of the filing of the [timely] complaint" the proposed party must have received notice of the action such that it will not be prejudiced in its defense and should have known that it would have been named in the action but for a mistake of identity).

### i.   *Rule 15(c)(1)(C)(i): Notice of the Action*

For the addition of CRP and A&M to relate back to the SAC, both parties must have "received such notice of the action" that the late addition will not prejudice their defenses. *Hogan*, 738 F.3d at 517; Fed. R. Civ. P. 15(c)(1)(C)(i).  Notice for the purposes of the Rule can be either actual or constructive.  *See Hahn v. Office & Prof'l Employees Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 384 (S.D.N.Y. 2015) (two parties can be "so 'closely related in their business activities or linked in their corporate structure' as to have an 'identity of interest'; in such a case, 'the institution of an action against one party will constitute imputed notice' to the related party later named in an amended complaint") (quoting *In re Allbrand*, 875 F.2d at 1025).

---

[17] The first scheduling order touching upon discovery was entered in the case only a week prior, when the only correctly identified parties to the action were the producers of the bulk lengths of hose, Europower and its successor EP Cleveland.  ConEd was never a party to the direct action, based on Plaintiffs' understanding of New York's workers compensation law, and was only brought into the case months after February 2012 when Europower filed its first third-party complaint.  (Pls. Reply at 3.)  Yet, there is no indication that Plaintiffs sought a Court order prior to the expiration of the statute of limitations compelling ConEd to provide information related to the hose.

The notice requirement naturally takes priority over the remaining requirement—that the Supply Chain Defendants knew or should have known they would have been named but for a mistake concerning the proper parties' identities—since that part of the test can never be met in situations where they were unaware, even constructively, of the lawsuit. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (the mistake requirement is concerned with "what the prospective defendant knew or should have known during the Rule 4(m) period").

CRP and A&M attest that neither knew of the action until *over a year after* the 120 day period provided for under Rule 15.  (Giannetta Decl., Ex. D (Europower's April 2013 subpoena to A&M); Rosenthal Aff. ¶¶ 4-7 (A&M had no knowledge of the lawsuit until April 2013); Gilson Aff. ¶ 2 (CRP had no knowledge of the lawsuit until September 2013).)  Plaintiffs contend that CRP and A&M's investigation of the incident in January 2009, mere weeks after it occurred, demonstrates that they must have known of the lawsuit and that there is a lack of prejudice to naming them as direct defendants now.  (Pls. Supp. at 13-14; Pls. Reply at 3, 8-10.) But as CRP and A&M dutifully observe, this confuses knowledge of potential liability with the necessary prerequisite—that they knew or should have known about the litigation.  (CRP Opp'n at 11; *see* A&M Opp'n at 9, 18-19.)  "At a minimum, . . . notice requires knowledge of the filing of suit, not simply knowledge of the incident giving rise to the cause of action." *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009) (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001)).

Plaintiffs have failed to demonstrate by any evidence that the Supply Chain Defendants, in, fact, knew of the lawsuit. *Cf. Trustees of Nat. Retirement Fund v. Wildwood Corp.*, No. 11 Civ. 6287 (NSR) (LMS), 2014 WL 1918080, at *2 (S.D.N.Y. May 12, 2014) (no error in magistrate's finding that proposed new defendant had actual notice of lawsuit where, *inter alia*,

the original complaint was mailed to him and defense counsel conceded the defendant was aware

of the action).  Without such evidence,[18] the gap between knowledge of potential liability and

knowledge of pursued litigation—the latter being necessary to find CRP and A&M had the

requisite notice—cannot be bridged.  *See, e.g.*, *Wingspan Records, Inc. v. Simone*, No. 12 Civ.

2172 (NRB), 2014 WL 2116191, at *5 (S.D.N.Y. May 16, 2014) (relation back inappropriate

where plaintiff "offered no reason to believe" defendants had notice of the action), *recons. den.*,

No. 12 Civ. 2172 (NRB), 2014 WL 6879849 (S.D.N.Y. Dec. 5, 2014).

 Given CRP and A&M's lack of actual knowledge of the preceding litigation, the only

way to find the notice requirement of Rule 15(c)(1)(C)(i) met is to find that the Supply Chain

Defendants had constructive knowledge of the suit.  To do so, Plaintiffs bear the burden of

proving CRP and A&M share an "identity of interest" with other entities that were named prior

to the running of the statute of limitations.  The identity of interest exception requires

"substantial structural and corporate identity, such as shared organizers, officers, directors, and

offices."  *In re Allbrand*, 875 F.2d at 1025-26 ("The two businesses must have organized or

conducted their activities in a manner that strongly suggests a close linkage."); *see also Berndt v.*

*Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986) (considering "the relationship of the new

defendants to the defendant(s) originally named, whether the same attorney represented both the

original and new defendants, and whether the defendants are officials of the original

defendant."); *but see In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 133 n.4 (E.D.N.Y.

---

[18] Plaintiffs bear the burden of demonstrating proper notice of the action.  *Cornwell v. Robinson*, 23 F.3d
694, 705 (2d Cir. 1994).  They argue the "December 2011 email chains that followed the filing of the Second
Amended Complaint" support their contention that CRP and A&M "knew earlier."  (Pls. Reply at 10; Anduze Decl.,
Ex. 8)  But, Europower's successor corporation, EP Cleveland, had just been added to the action in October 2011—
providing a plausible, even if speculative, reason for why the email chain was forwarded in December 2011.  (ECF
Nos. 29-30.)  In any event, the 2009 email chain containing discussions between representatives of ConEd and
Europower, forwarded in December 2011 to Greg Smietanski (likely another Europower employee), provides no
basis to conclude or to speculate that CRP and A&M were aware of the litigation at that time.  (*See* Anduze Decl.,
Ex. 8 (no mention of the lawsuit or indication the email was sent to representatives of CRP or A&M regarding suit).)

2014) (citing *In re Allbrand*, 875 F.2d at 1025) ("A parent-subsidiary relationship, which is actually absent here, is insufficient even when combined with shared counsel").

Plaintiffs again fail to provide any evidence that the Supply Chain Defendants are linked to any of the parties named to the suit prior to February 13, 2012: SPX, Eaton, CT Corp., Baldwin, Europower, Parker Corp., Parker Hose, and EP Cleveland, chronologically. Nor does the Court find such a linkage from the record before it. (Rosenthal Aff. ¶¶ 5, 7 (A&M has no corporate relationship with the previously named parties); Gilson Aff. ¶ 6 (same for CRP).) Without actual or constructive knowledge of the lawsuit, the second part of the relation back test is not met, and Plaintiffs cannot add CRP and A&M to the suit pursuant to Rule 15(c)(1)(C).

### ii. *Rule 15(c)(1)(C)(ii): Not Named Due to Mistake*

Even though relation back under the federal rule is unavailable due to the previously discussed failing of the second part of the test—lack of timely notice to the Supply Chain Defendants—this is not to say that Plaintiffs were not mistaken, nor that the type of mistake is of a category completely outside the scope of Rule 15(c)(1)(C). It is readily apparent that Plaintiffs were repeatedly mistaken as to which entity had manufactured, modified, distributed, and sold the hose at issue to ConEd.[19] During this stage of the analysis, however, the focus is still on "what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known" when the complaint was filed. *Krupski*, 560 U.S. at 548. Rather than analyze why Plaintiffs were mistaken, the pertinent inquiry is whether CRP

---

[19] The mistake here concerns confusion as to whether Party A or Party B is the correct defendant—not the late addition of Party B because of Plaintiffs' lack of knowledge, as in replacing John Doe defendants with "newly added defendants [that] were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517 (citing *Barrow*, 66 F.3d at 470) (which the Second Circuit has "interpreted [Rule 15(c)] to preclude"). Nor is this the obviously precluded case where the plaintiff has knowledge but chooses not to act. *See Scott v. Village of Spring Valley*, No. 11 Civ. 4167 (NSR) (PED), 2013 WL 5807405, at *5 (S.D.N.Y. Oct. 28, 2013) (because plaintiff knew of and deposed the officers involved without amending the complaint before the limitation period ran, the late attempt to add them could not have been viewed *by the officers* as a mistake).

and A&M should have known they were the intended targets of the litigation.  Having already

determined that neither had any notice of the litigation until after the statute of limitations had

run, they could not have known prior to February 2012 that they would have been named if not

for Plaintiffs' mistake in identifying the correct entities in the supply chain.

Assuming *in arguendo* that the new potential defendants *were aware* of the lawsuit, and

particularly once Europower was added to the action, it would have been obvious that Plaintiffs

had mistakenly named companies that had nothing to do with creating the hose at issue.  This

conclusion is compelled by the point Plaintiffs repeatedly raise: ConEd, Europower, CRP, and

A&M knew shortly after the incident that CRP and/or A&M had purchased Europower hose that

was subsequently modified and sold to ConEd.  (Anduze Decl., Ex. 8 (email chain between

ConEd employee and Europower employees); Lee Tr. at 71:13-22; Lee 2d Tr. at 173:6-176:10

(meeting between ConEd, CRP, and A&M to inspect the ruptured hose).)  As CRP and A&M

unquestionably knew of the incident, if they had also known of the suit *naming parties that did

not manufacture or distribute the hose in question* then they would have had to know that

Plaintiffs had mistakenly named those other parties rather than making a "fully informed

decision." *Krupski*, 560 U.S. at 552; *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 289

F.R.D. 401, 407 (S.D.N.Y. 2013) ("The record now indicates that [the originally sued defendant]

and ACH [the prospective new defendant] knew that ACH employees helped make [the relevant]

decisions.  ACH [which received notice of the action] may not escape suit on these same claims

solely because [the plaintiff] was ignorant of crucial facts about [ACH's] role").  To conclude

otherwise would incentivize a potentially liable defendant, fully informed of its potential liability

and of a pending lawsuit, to conceal its identity until the expiration of the statute of limitations.

*See In re Vitamin C*, 995 F. Supp. 2d at 130 ("Rule 15(c)(1)(C) is addressed to the situation

15

where a plaintiff has sued the wrong party, and the right party, reasonably aware of the error, sits on the sidelines while the statute of limitations runs out").

But, without any indication that the Supply Chain Defendants were aware of the litigation, the requirements of Rule 15(c)(1)(C) are not met and Plaintiffs cannot amend their complaint under the federal relation-back standards.

### b.   Rule 15(c)(1)(A): Whether New York Relation-Back is More Favorable

Having determined that Rule 15(c)(1)(C) does not allow Plaintiffs to amend their complaint to add CRP and A&M, the Court considers whether, pursuant to Rule 15(c)(1)(A), New York's relation-back standard would allow for amendment where the Supply Chain Defendants did not have actual knowledge of the suit until at least a year after the SAC was filed. The New York test is, as with the federal rule, concerned with whether a new party has received, or can be charged with receiving, notice of the action.  *See, e.g.*, *Linares v. Franklin Mfg. Corp.*, 155 A.D.2d 518, 519 (2d Dep't 1989) (since "the original complaint and the third-party complaint were timely served within" the statute of limitations period, the third-party defendant was "provided adequate notice of the transactions and occurrences out of which the new theory" arose and could be named in the main action).

In the absence of actual notice, under New York law, "a claim asserted against a defendant in an amended filing [will] relate back to claims previously asserted against a codefendant for Statute of Limitations purposes where the two defendants are 'united in interest.'"  *Buran v. Coupal*, 87 N.Y.2d 173, 177 (1995); C.P.L.R. § 203(c).  Again similar to the federal rule, the requirements for finding relation back are that:

> (1) both claims arose out of the same conduct, transaction or
> occurrence, (2) the new party is 'united in interest' with the original
> defendant, and by reason of that relationship can be charged with
> such notice of the institution of the action that he will not be

> prejudiced in maintaining his defense on the merits and (3) the new
> party knew or should have known that, but for [a] mistake by
> plaintiff as to the identity of the proper parties, the action would have
> been brought against him as well.

*Buran*, 87 N.Y.2d at 178-79 (noting C.P.L.R. § 203 was "patterned largely after the Federal

relation back rule"); *see Doe v. New York, et al.*, 97 F. Supp. 3d 5, 20-21 (E.D.N.Y. 2015)

(summarily disposing of relation back under § 203 where Rule 15(c)(1)(C) was inapplicable).[20]

The "united in interest" requirement, that the parties be closely linked so "they stand or

fall together, and judgment against one will similarly affect the other," *Prudential Ins. Co. of

America v. Stone*, 270 N.Y. 154, 161 (1936), is New York's corollary to constructive notice

under Rule 15(c) and is dispositive in this case.  Plaintiffs' failure, as discussed, to demonstrate a

linkage between the Supply Chain Defendants and any previously named parties similarly

forecloses any argument that they are united in interest with those parties, making relation back

impossible under New York law as well.  *Abbott v. Ostad*, 8 Misc.3d 1029(A) (Table), No.

21818/04 (NSR), 2005 WL 2031745, at *3-5 (Sup. Ct. Bronx Cty. Aug. 23, 2005) (plaintiffs'

allegations that defendants were united in interest did not overcome defendant's sworn affidavit

to the contrary, and without unity of interest relation back was inapplicable); *Quine v. Burkhard

Bros., Inc.*, 167 A.D.2d 683, 684 (3d Dep't 1990) (even though purchasing company continued

producing the same products previously manufactured by unrelated entity's manufacturing

division, the two companies were "separate and distinct business entities" with "no jural

relationship"—neither was "vicariously liable for the acts of the other and, thus, there [was] no

unity of interest between them").

---

[20] As previously discussed, *supra* n. 19, this is not a John Doe defendant substitution, for which New York provides a far more generous relation back standard.  *Hogan*, 738 F.3d at 518-19 (C.P.L.R. § 1024 "permit[s] John Doe substitutions *nunc pro tunc*").

## II.      Application of Rule 16(b)

This Court need not decide whether Plaintiffs have shown "good cause" under Rule 16(b) to amend the scheduling order[21] in order to file an amended complaint, given that leave to amend cannot be granted under either the federal or state relation-back principles.  Nevertheless, Plaintiffs' bare allegations of a "conspiracy of silence" would be insufficient to demonstrate "good cause"—which "depends on the diligence of the moving party."  *Parker*, 204 F.3d at 326.

It is true that it took until January 2016 for the full extent of the Supply Chain Defendants' potential involvement in the production or distribution of the hose, and their investigation of the hose once it ruptured, to be revealed to Plaintiffs.  But that lengthy delay does not speak to Plaintiffs' diligence in uncovering the information.  Moreover, while the delay in the matter caused by repeated inter-court transfers is regrettable, there is no indication that, once the case began to move forward, Plaintiffs sought to subpoena ConEd—the party most likely to have the pertinent information—for records related to the acquisition of the hose assembly.  Instead, Europower's slow, but consistent, progress in determining which parties should be included in the action starkly contrasts with Plaintiffs' failure to do the same.  (*See* Mem. Endorsement dated Oct. 29, 2013, providing Plaintiffs' the opportunity to take discovery from CRP and A&M, ECF No. 76.)  Plaintiffs cannot complain of the lateness of learning important factual background about its case when the source of the information is a defendant in the action doing Plaintiffs' discovery for them.

*             *             *

---

[21] As a factual matter, however, it is unclear to the Court that the request was *not* made within the 45 day window surrounding the completion of non-party depositions, particularly in light of Kyle Lee's continued deposition that took place on January 12, 2016—42 days before the motion was fully submitted, and months after Plaintiffs indicated their intention to add CRP and A&M as direct defendants.

The Supply Chain Defendants' lack of actual or constructive notice of the litigation until well over a year after the statute of limitations expired is fatal to Plaintiffs' motion to amend their complaint at this late juncture.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion seeking leave to amend the operative complaint in this action is DENIED and this Court ORDERS:

1. Second Third-Party Defendant A&M Industrial is directed to submit a letter requesting a briefing schedule for its motion for summary judgment and/or seeking leave to file a motion to dismiss; and

2. Second Third-Party Defendant CRP Industries, Inc. is directed to submit a letter requesting a briefing schedule for its motion to dismiss.

The parties are directed to appear for a pre-trial conference on September 29, 2016, at 10:00 a.m.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 158.

Dated:   September 16th, 2016                         SO ORDERED:
         White Plains, New York

                                              _____
                                                   NELSON S. ROMÁN
                                              United States District Judge