UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LOUIS GIRAU and ROSEMARY GIRAU,

                        Plaintiffs,

-against-

EUROPOWER, INC.,

                        Defendant.

---------------------------------------------------------------

EUROPOWER, INC.,

                      Second Third-Party Plaintiff,

-against-

CRP INDUSTRIES, INC. and A&M INDUSTRIAL,

                      Second Third-Party Defendants.

No. 10 Civ. 4320 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    In this personal injury and products liability action, Plaintiff Louis Girau seeks to hold various participants in the supply chain for a specific type of hydraulic hose assembly accountable for his injuries, which were caused when such a hose ruptured. This Opinion assumes familiarity with the facts of this matter and its long-evolving cast of characters. Notably, because the statute of limitations ran on Plaintiffs' claims on December 18, 2011, the Court previously denied Plaintiffs' motion seeking leave to amend their complaint to include CRP Industries, Inc., and A&M Industrial (the Second Third-Party Defendants or "Supply Chain Defendants") in the direct action. *See Girau v. Europower, Inc.*, 317 F.R.D. 414 (S.D.N.Y.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/2017

2016). The sole-remaining direct Defendant (and Second Third-Party Plaintiff) Europower, Inc. ("Europower") has now moved for summary judgment on Plaintiff's claims on the basis that he cannot sufficiently establish the identity of manufacturer of the hydraulic hose that ruptured and caused his injuries. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

The wandering path of this litigation is set forth in *Girau v. Europower, Inc.*, 317 F.R.D. 414, 417-19 (S.D.N.Y. 2016). To briefly summarize the undisputed facts relevant to deciding Defendant's summary judgment motion,[1] Europower, now-defunct, was an American distributor of hydraulic hose that was made overseas in England by Europower Group, Ltd. ("Europower England"). (Pls. Mem. at 4, 12-13; Pls. 56.1 at 6-7; Def. 56.1 ¶¶ 2-3.) "In August 2010, '[a]n expert accompanying counsel for [a previous defendant, since dismissed from the action,]' to 'a physical inspection of the [faulty] equipment' concluded, and informed Plaintiffs, that the hose [at issue in this action] was a Europower hose," and Plaintiff added Europower to the suit. *Girau*, 317 F.R.D. at 417. EP Cleveland is the American successor company to bankrupt Europower. (Pls. Mem. at 4; Def. 56.1 ¶ 2.) Before the limitations period ran, Plaintiff also added EP Cleveland to this action as part of filing the Second Amended Complaint, which is the operative complaint, on October 14, 2011. (ECF Nos. 29-30.)

By that point, Plaintiffs had identified and added the prior U.S.-based distributor and modifier of the bulk lengths of hose, Europower, and its successor corporation EP Cleveland, but had not added Europower England nor correctly identified the remaining entities in the supply chain. Yet, on February 7, 2012, after the limitations period had expired, EP Cleveland was

---

[1] These facts are drawn from the parties' Rule 56.1 statements (*see* Def. 56.1, ECF No. 185; Pls. 56.1, ECF No. 197), accompanying affidavits, exhibits, and memoranda of law (*see* Def. Mem., ECF No. 188; Pls. Opp'n, ECF No. 198, Def. Reply, ECF Nos. 186 & 187) where supported by admissible evidence. The Court has attempted to generously construe the submissions in favor of the non-moving party, Plaintiffs, despite their failure to provide appropriate Rule 56.1 statements.

voluntarily dismissed from the action by an agreement between the parties. (ECF No. 61.) Over a year and a half later, Plaintiffs finally came to realize that CRP and A&M were involved in the supply chain of the hose assemblies.

In October 2013, "[a] representative for Europower would eventually explain [to Plaintiffs] that CRP bought hose in bulk from Europower [England] to modify and then distribute, potentially to ConEd, and that A&M had purchased hose assemblies based on a ConEd specification directly from Europower only once." *Girau*, 317 F.R.D. at 417 n.1 (citing Ciocca Tr. at 29, 33, 50-51).[2] Indeed, it is now undisputed that ConEd purchased approximately 1,700 such assemblies per year, and those assemblies came from either CRP or A&M. (Def. 56.1 ¶¶ 5-6; Pls. 56.1 at 6-9.) But Plaintiff has uncovered evidence of only one order of hose assemblies, sold by A&M to ConEd, that originated with Defendant Europower; the assemblies from CRP were based on hose purchased directly from Europower England. (*See* Pls. Mem. at 13-15; Pls. 56.1 at 9; Def. 56.1 ¶¶ 3-7.) And that single batch of A&M-Europower hose assemblies—delivered to ConEd two years prior to the accident—represented only 250 of the average 1700 hoses purchased that year. (Defs. 56.1 ¶ 5; Pls. Mem. at 14.)

**STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v.*

---

[2] On October 3, 2013, based on Europower's representation that it had just gained access to one of its former employees, discovery was extended to October 24, 2013, to allow for the deposition of the sales manager at the time of the accident: Ron Ciocca. (ECF No. 75.) During his October 17, 2013 deposition, Mr. Ciocca discussed the potential involvement of CRP and A&M in the hose supply chain. (Ciocca Tr. at 14-17, 23, 29-31.)

*Catrett*, 477 U.S. 317, 323 (1986).  The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention.  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation."  *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (such affidavits "greatly diminish

4

the utility of summary judgment as a procedure for screening out sham issues of fact")). But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

Defendant Europower now moves for summary judgment on the ground that it cannot be held strictly liable for Plaintiff's product liability claims given that Plaintiff cannot confirm—to the degree required by New York law—that Europower played a role in the creation, distribution, or sale of the particular hose at issue in this case. (*See* Def. Mem. at 3 ("plaintiff in this case cannot and will never be able to identify the 'exact defendant' that distributed the hose which was allegedly involved in the plaintiff's accident").) Plaintiffs counter that Europower is attempting to hide behind a European parent company, the existence of which it allegedly concealed, opposing summary judgment and requesting by cross-motion that this Court preclude Europower from asserting such a defense. (*See* Pls. Opp'n at 8.) But the Court cannot ignore that Defendant has consistently denied being the manufacturer of the specific hose that ruptured. (Def. Reply at 6-7; *compare* Compl. ¶ 15 (alleging one of the then-named defendants "manufactured and assembled the hydraulic hose assembly, its parts and appurtenances,

5

including the hydraulic hose, the metal couplings, and the plastic sleeve"), ECF No. 30, *with* Def. Ans. ¶ 15 (denying "each and every" allegation in that paragraph), ECF No. 40.)

Ultimately, the persistent problem in this action was identified by the Court in its last opinion denying Plaintiffs' motion to add additional parties that apparently may have been involved in the manufacturing, assembling, or distribution of the hose: Plaintiffs cannot now claim prejudice or deception when they let Europower do the work of identifying the proper potentially liable parties. *Girau*, 317 F.R.D. at 425 ("Europower's slow, but consistent, progress in determining which parties should be included in the action starkly contrasts with Plaintiffs' failure to do the same."); *see also, e.g.*, *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 492 (D.N.J. 2002) (similarly denying a plaintiff's attempt to amend the complaint to add new, potentially liable, parties to the direct action where "the procedural history of the case suggest[ed] that [the] [p]laintiff's Amended Complaint was merely a belated response to [the existing defendant's] efforts to pull additional party defendants into the litigation" via its third-party complaint). Indeed, EP Cleveland, the successor company from which Europower had to request most of the information that it then provided to Plaintiffs, was properly added to the case *before* the statute of limitations ran, *id.* at 422 n.18, but was then voluntarily dismissed by Plaintiffs. Plaintiffs could have continued the suit with EP Cleveland as a defendant and sought discovery relating to Europower England's involvement in the bulk lengths of hose, or sought to add Europower England as a defendant, but they did not.[3] These litigation choices and overall lack of diligence had and continue to have severe consequences on Plaintiffs' claims.

"Under New York law, a plaintiff who brings a product liability action [ultimately] bears the burden of proving that the defendant manufactured the offending product." *Paniagua v.*

---

[3] In Plaintiffs' discussion of the evolution of this action, they fail to adequately account for these tactical decisions in a fashion that demonstrates their entitlement to the preclusion remedy they seek. (*See* Pls. Opp'n at 8.)

*Walter Kidde Portable Equip., Inc.*, 183 F. Supp. 3d 473, 484 (S.D.N.Y. 2016) (citations omitted); *see also Healey v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601 (1996) (plaintiff "must establish by competent proof [] that it was the defendant who manufactured and placed in the stream of commerce the injury-causing defective product"). In situations where the allegedly defective product is missing or has been destroyed, the manufacturer's identity may be shown by circumstantial evidence. *Healey*, 87 N.Y.2d at 601. Such evidence, however, "must establish that it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product." *Id.* at 601-02 ("Speculative or conjectural evidence of the manufacturer's identity is not enough").[4]

In cases where the plaintiff has provided sufficient circumstantial evidence of the identity of the manufacturer to create a triable issue, the evidence tends to point to a single potential manufacturer. *See, e.g.*, *Ambers v. C.T. Indus., Inc.*, 170 A.D.2d 349, 350 (1st Dep't 1991) (evidence "introduced to demonstrate that [defendant's] then wholly-owned subsidiary . . . provided the only work uniforms to plaintiff's employer at the time of the accident"); *Otis v. Bausch & Lomb Inc.*, 143 A.D.2d 649, 650 (2d Dep't 1988) (evidence presented indicated that only defendant's brand of contact lenses were supplied to plaintiff); *see also Ebenezer Baptist Church v. Little Giant Mfg. Co.*, 28 A.D.3d 1173, 1174 (4th Dep't 2006) (because defendant manufacturer "submitted evidence that the heater was purchased from defendant [distributor] and

---

[4] Pursuant to New York procedural rules, "a defendant seeking summary judgment dismissing the complaint and cross claims against it on the ground that it was not the manufacturer or supplier of the allegedly defective product has the initial burden of establishing as a matter of law that it did not manufacture or supply the product." *Ebenezer Baptist Church v. Little Giant Mfg. Co.*, 28 A.D.3d 1173, 1174 (4th Dep't 2006); *see also Universal Res. Holdings, Inc. v. N. Penn Pipe & Supply, Inc.*, 129 A.D.3d 1671 (4th Dep't 2015) ("a party does not carry its burden in moving for summary judgment by pointing to gaps in its opponent's proof"). In a federal action, however, the Federal Rules of Civil Procedure allow a party to demonstrate its entitlement to summary judgment by showing a lack of evidence supporting the non-moving party's position. *See, e.g.*, *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 268 (S.D.N.Y. 2016) (court held that "[p]laintiff failed to adduce evidence to create an issue of material fact," where he failed to introduce admissible evidence showing defendant's product was in use where he worked, and that "allowing [p]laintiff to defeat summary judgment [without identifying manufacturer] would require [the fact finder to] resort to 'mere speculation [and] conjecture as to the true nature of the facts.'") (citation omitted).

that, during the relevant time period, [that distributor] had purchased all its heaters from [that manufacture]", it was for the "trier of fact to determine whether the circumstantial evidence establishe[d] that it [was] reasonably probable that [the manufacturer] manufactured or supplied the heater" at issue); *see also* (Pls. Mem. at 11 (collecting similar cases)).

In contrast, here, the evidence indicates that two distributors were responsible for providing the hose assemblies to ConEd. And, the hose assembly appears to be available for further inspection. (*See* Pls. Opp'n at 12, 15.) But, those distributors are not party to the direct action, and the Europower entity implicated by each distributor is different. Moreover, Plaintiff has been unable to determine which entity created the assembly. Given that only 250 of the on average 1,700 hoses purchased by ConEd annually can be fairly traced back to Defendant (and those were provided two years *prior* to the accident), it is not "reasonably probable," and certainly not beyond "evenly balanced," that Europower (via A&M) provided the hose as opposed to non-party Europower England (via CRP). *See D'Amico v. Manufacturers Hanover Tr. Co.*, 173 A.D.2d 263, 266 (1st Dep't 1991) (where distributor sold two types of ladders to company and both ladder manufacturers were party to the action, the ladder manufacturers were nevertheless entitled to summary judgment because "no testimonial or documentary proof whatsoever . . . permit[ted] a reasoned inference that [one manufacturer], rather than [the other], was the manufacturer of the ladder"); *Sosa v. Joyce Beverages, Inc.*, 159 A.D.2d 335, 337 (1st Dep't 1990) (evidence indicated that company "received greater shipments of empty glass bottles from [other] defendants" than from the defendant that provided the most recent shipment, entitling that defendant-manufacturer to summary judgment).

The theory of liability most applicable to this action is, therefore, the doctrine of alternative liability, which is "available in some [] cases to permit recovery where the precise

identification of a wrongdoer is impossible." *Silver v. Sportsstuff, Inc.*, 130 A.D.3d 907, 908 (2d Dep't 2015) (citations omitted). But because the burden of disproving liability, should the defendants hope to avoid being jointly and severally liable for the injury, shifts to each defendant under alternative liability, it "requires joinder of all the parties who could have been responsible for a plaintiff's injuries" to avoid unfairness to the potential defendants—particularly where they could be held strictly liable.[5] *Id.* (permitting application of the doctrine where plaintiff purchased the defective product from a store that was supplied by two distributors—both of whom were parties to the litigation).[6] Thus, Plaintiffs' failure to bring either Europower England or the Supply Chain Defendants into the action within the statute of limitations forecloses that avenue of apportioning fault and maintaining their products liability claims.[7]

Summary judgment in favor of Defendant is, therefore, granted. As in *Sosa*, it is impossible for a trier of fact to infer that it is "reasonably probable" that Defendant provided the hose at issue, given that evidence presented shows Defendant's hose assemblies were only approximately 15% of the hoses ConEd ordered in a given year. *See Sosa*, 159 A.D.2d at 337

---

[5] "The central rationale for shifting the burden of proof in such a situation is that without this device both defendants will be silent, and plaintiff will not recover; with alternative liability, however, defendants will be forced to speak, and reveal the culpable party, or else be held jointly and severally liable themselves. Consequently, use of the alternative liability doctrine generally requires that the defendants have better access to information than does the plaintiff, and that all possible tort-feasors be before the court." *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 505 (1989) (citing, *inter alia*, *Summers v. Tice*, 33 Cal. 2d 80, 86 (1948), "the paradigm of alternative liability" involving three companions on a hunt, where two of the hunters shot at the same bird and injured the third but which of the hunters caused the injury was uncertain).

[6] None of the evidence presented by either party justifies the application of any of the other potential theories of liability, such as the market share or the concerted action theories, to this matter. *See Hamilton v. Beretta U.S.A. Corp.*, 264 F.3d 21, 29 (2d Cir. 2001) (New York Court of Appeals, answering certified questions from the Second Circuit, explained that market share liability is generally reserved for identical fungible products, such as generic medication, making it inappropriate for guns); *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295-96 (1992) ("because application of concerted action renders each manufacturer jointly liable for all damages stemming from any defective product of an entire industry, parallel activity by manufacturers is not sufficient justification for making one manufacturer responsible for the liability caused by the product of another"); *see also Matter of New York State Silicone Breast Implant Litig.*, 166 Misc. 2d 85, 89 (Sup. Ct. N.Y. Co. 1995), *aff'd*, 234 A.D.2d 28 (1st Dep't 1996) (neither theory applicable to manufacturers of silicone breast implants).

[7] Contrary to Plaintiffs' contention, (*see* Pls. Opp'n at 5), it was not Defendant Europower's responsibility to identify all potentially liable entities for Plaintiffs by impleading them into the action.

(three manufacturers provided glass bottles to a bottling company, but the most recent delivery from one manufacturer was less than the previous shipments from the other two manufacturers). And because Plaintiffs' lack of diligence in ascertaining the identity of the proper parties is not grounds for precluding Defendant Europower from introducing evidence regarding the origin of the hose assemblies supplied to ConEd, Plaintiffs' preclusion motion is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiffs' cross-motion to preclude Defendant from asserting certain defenses is DENIED. The pending motions for summary judgment filed by Third-Party Defendants (ECF Nos. 202 & 206) are DENIED as MOOT. Similarly, because the underlying action is now dismissed, the Second Third-Party complaint is also dismissed, without prejudice, as MOOT. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 177, 183 & 196 and Nos. 202 & 206, to enter judgment in favor of Defendant, and to close the case.

Dated: September 14, 2017
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

10